IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2008

## STATE OF TENNESSEE v. ROBERT EDWARD BOLING

**Appeal from the Criminal Court for Sullivan County**
**No. S52,723    Robert H. Montgomery, Jr., Judge**

_____

**No. E2008-00351-CCA-R3-CD - Filed February 26, 2009**

_____

The defendant, Robert Edward Boling, was convicted by a Sullivan County Criminal Court jury of aggravated robbery, *see* T.C.A. § 39-13-402 (2006). He challenges the sufficiency of the convicting evidence and the admission of testimony that he alleges was "fruit of the poisonous tree." Because the defendant's motion for new trial was untimely, we hold that he has waived our consideration of any issue except for sufficiency of the evidence. Holding that the jury was within its province in convicting the defendant, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

William A. Kennedy, Blountville, Tennessee, for the appellant, Robert Edward Boling.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 5, 2006, the victim, Sarah McMurray, was shopping at a Kroger grocery store in Kingsport, Tennessee, with her husband when a man "jerked" her pocketbook from her. As a result, she fell to the ground and broke her arm. A bystander identified the defendant as the assailant. On January 10, 2007, a Sullivan County Grand Jury indicted the defendant on one count of aggravated robbery and, after a two-day jury trial, the defendant was convicted as charged. The trial court sentenced the defendant to 30 years' imprisonment as a career offender with career release eligibility (60 percent), and the jury imposed a $25,000 fine. The final judgment was entered on October 12, 2007.

On November 14, 2007, the defendant filed a motion for new trial. Despite the untimeliness of the motion, the trial court held a hearing on the motion for new trial on January 24,

2008, and denied the motion in a minute entry order on the same day. Because the motion for new trial was time-barred, the trial court had no jurisdiction to either conduct a hearing or make a ruling on the defendant's motion for new trial.[1] *See State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997) (explaining that when thirty days elapse following the entry of the judgments and no tolling motion is timely filed, the trial court loses jurisdiction to vacate the convictions).

On February 14, 2008, the defendant filed his notice of appeal and asserted six issues for our consideration. His first three issues collectively allege insufficiency of the convicting evidence. In his last three issues, he argues that the trial court erred by admitting testimony that was "elicited from a statement that had agreed to be suppressed," by admitting a photograph that was similarly "elicited from a statement that had agreed to be suppressed," and by "not conducting a motion to suppress once the objection was made at trial to exclude [the testimony and the photograph]."

At trial, the victim testified that, on October 5, 2006, she and her husband had been shopping at the Kroger grocery store on Stone Drive in Kingsport, Tennessee. Her husband parked their vehicle near the back of the parking lot, "quite a ways from Kroger." She testified that she "looked around and saw a man" and that she first thought he was an employee collecting shopping carts from the parking lot. She said, "Well all of a sudden I had a jerk and he jerked my purse off and I said 'He got my pocketbook,' that's all I seen." Her husband ran after the assailant. She testified that her "pocketbook" contained her credit cards, checkbook, and $70 in cash, and she confirmed she did not give the defendant or anyone else permission to take it from her.

The victim testified that she fell as a result of the robbery and that she was subsequently taken to Indian Path Hospital. She said, "I don't remember falling but I fell and when I did come to myself the rescue squad men w[ere] taking me in . . . I was really in pain." She testified that she suffered a contusion to her head and a broken left arm. She testified that she could not use her left arm for any purpose "for a long time" and that the arm "still g[ave] [her] trouble."

Doctor James H. Burleson, who worked at Indian Path Hospital, treated the victim in the emergency room after the robbery, and he testified at trial as an expert in emergency medicine. He stated that the victim "was complaining with left shoulder pain and left knee pain and [he] did x-rays." He reported that "the x-ray . . . show[ed] that she [had] a fracture of her proximal humorous of her left arm," and he explained that "[t]he long bone of the left arm at the shoulder joint was where it was broken." He testified that the victim continued to suffer from an "overall decreased range of motion in her left shoulder" and "associated pain." Doctor Burleson stated, "I would believe that she would have continued arthritic type pain with that shoulder." He further stated that

---

[1]The clerk entered the trial court's judgment on October 12, 2007. Thus, the beginning of the 30-day period began on October 13, 2007. *See* Tenn. R. Crim. P. 45(a)(1). The thirtieth day fell on November 11, 2007, a Sunday. The State of Tennessee observed Veteran's Day as a legal holiday on Monday, November 12, 2007. The last day of a filing period cannot fall on a Saturday, Sunday, or legal holiday, *see* Tenn. R. Crim. P. 45(a)(2)(A); therefore, the last day for the defendant to file his motion for new trial was Tuesday, November 13, 2007. The clerk file-stamped the defendant's motion on Wednesday, November 14, 2007, one day outside the 30-day jurisdictional period.

the victim's injuries were consistent with another person grabbing her purse and knocking her to the ground and her landing on her left shoulder.

Tracy Lawson testified that she worked for MR Cleaners and delivered laundry among the company's different locations in the area. She stated that on October 5, 2006, she made a delivery to the MR Cleaners located in the same shopping center as Kroger. Ms. Lawson "saw somebody walk around the corner of the building." She recalled that she payed particular attention to this individual because "nobody ever c[a]me around that corner except for the employees that worked there because that's where [employees] parked." She testified that, as she unloaded the delivery van, she heard somebody yell, "'Stop motherf[---]er.'" She then "saw the same guy that had walked by [her] running back, he r[a]n right back in front of [her] carrying a woman's pocketbook and then [she] saw another man chasing him and then an elderly man chasing him." She testified that the man with the victim's purse "had on an orange t-shirt, baseball cap, [and] blue jeans" and that he "had a little bit of a goatee."

Ms. Lawson stated that, after seeing the men pass, she "told one of the girls . . . that worked there . . . 'Call 911, he's just stole somebody's pocketbook.'" She later described what she observed to law enforcement officers. Later that day, the police brought an individual to MR Cleaners for the purpose of having Ms. Lawson make an identification. She testified that, although "[h]e had changed clothes and took his hat off," there was "no doubt" in her mind that the man in police custody was the perpetrator. She identified the man as the defendant in court.

Larry Beckner testified that, on October 5, 2006, he was riding in the back of his mother's minivan in the Kroger parking lot when he "heard . . . a man . . . hollering out about stopping [and] somebody grabbed his wife's pocketbook." Mr. Beckner testified that he "dove out of the van and chased the fellow around the building of the store." He clarified that he did not witness the actual robbery and that he only saw a man running with a pocketbook.

Mr. Beckner testified that he chased the man and tried to "football tackle" him, but "the only thing [he] did was grabbed [sic] a hold of his britches leg which he eventually got loose." He testified that he had a brief conversation with the man and asked him to throw the pocketbook back to him. He said the man "finally threw down the pocketbook and the old man was standing beside of me and I handed him the pocketbook and he checked it to make sure that everything was in it." The man then ran up a hill and into a wooded area.

Mr. Beckner said that the man "had like a ball cap on, sun glasses, sort of stubby facial hair, like reddish blond, a reddish color." He explained, "He had on a pair of blue jeans, an orange shirt and I think like . . . work boots or something like that." Mr. Beckner stated that he spoke with the police later that day . Mr. Beckner was unable to identify the defendant as the man he had chased. On cross-examination he explained that he could not see the man well because "the sun was sort of in [his] eyes."

Officer David Johnson of the Kingsport City Police Department testified that he responded to a call that a robbery had taken place at Kroger. He arrived at the scene and "[s]et up a perimeter." The first description he obtained of the man "was a white male, goatee, bald, wearing

blue jeans, an orange shirt and a ball cap . . . black with a large B on it." He stated that "[a] short time into the search" he received information that the man "may have switched into a gray t-shirt."

Officer Johnson located a man that he suspected to be the perpetrator at a picnic bench. The man "had his head down on the table but . . . [was] wearing a gray t-shirt and a shaved head." He testified, "[The man] had a long mustache matching the description and then after I had handcuffed him for my safety I noticed behind him a black ball cap matching the description." Officer Johnson stated that the baseball cap was "a couple of feet" behind the suspect. He explained that the man's mustache "c[a]me all the way down to his chin area from all the way across." The mustache "stayed close to his face and just ran down his face down to his chin." He identified the man at the picnic table as the defendant.

Shirley Aston testified that she worked as the cashier at a J's Food Mart convenience store on October 5, 2006. She testified that she had known the defendant for "a long time" because his mother had been her "boss." She stated that the defendant came to the convenience store on October 5 to buy lottery tickets.

Ms. Aston testified that the convenience store was equipped with a security camera system and that she had used photographs from the camera system on previous occasions. She identified herself and the defendant in a picture taken by the camera system on October 5, 2006. The trial court admitted the photograph from the convenience store security camera into evidence. The photograph showed that the defendant wore a black baseball cap, orange tee shirt, and blue jeans.

The defendant chose not to testify, and defense counsel presented no proof. Based on the evidence as summarized above, the jury convicted the defendant of aggravated robbery. On appeal, the defendant challenges the sufficiency of the convicting evidence. He further challenges the admission of Ms. Aston's testimony and the security camera photograph. He argues this evidence was "fruit of the poisonous tree" because law enforcement only discovered that the defendant visited J's Food Mart through the defendant's confession, which the parties "had agreed to be suppressed."

*I. Suppression Issues*

The defendant alleges three grounds of error regarding the "fruit of the poisonous tree" of evidence that the parties allegedly "had agreed to be suppressed." The State contends that, because the defendant filed an untimely motion for new trial, he has waived his appeal of these issues. We agree with the State. A motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered." Tenn. R. Crim. P. 33(b). We stress that this provision is mandatory, and the time for the filing cannot be extended. Tenn. R. Crim. P. 45(b); *Martin*, 940 S.W.2d at 569. Furthermore, the appellate court is precluded from considering any issue raised in an untimely motion for new trial for which the remedy is a new trial. Tenn. R. App. P. 3(e). In the present case, the claim of an untimely motion for new trial affects only the suppression issues, not the issue of sufficiency of the evidence.

*II. Sufficiency of the Evidence*

Before considering the sufficiency of the convicting evidence, we note that the ineffectual motion for new trial and the resulting order overruling the same led to the untimely filing of the notice of appeal. *See* Tenn. R. App. P. 4(a). On this issue, however, the law imparts some leeway in criminal cases. Tennessee Rule of Appellate Procedure 4(a) provides that the notice of appeal in criminal cases is not jurisdictional for the appellate court, which can waive the timely filing of the notice in the interest of justice. The defendant erroneously believed that his untimely motion for new trial tolled the filing date of his notice of appeal; however, the interest of justice demands that we waive the timely filing of the notice of appeal, and accordingly, we will address the issue of sufficiency of the evidence.

The defendant challenges the sufficiency of the evidence resulting in his conviction of aggravated robbery, arguing that "identity is the major issue." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict because a guilty verdict destroys the presumption of innocence and replaces it with a presumption of guilt. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003); *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court must reject a defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Issues of the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court will not re-weigh or re-evaluate the evidence. *See Evans*, 108 S.W.3d at 236; *Bland*, 958 S.W.2d at 659. This court may not substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236-37; *Carruthers*, 35 S.W.3d at 557.

Tennessee Code Annotated section 39-13-401 defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2006). An act of robbery is elevated to aggravated robbery, as relevant to this case, when "the victim suffers serious bodily injury." *Id.* § 39-13-402(a)(2). Title 39 of our criminal code defines "serious bodily injury" as bodily injury involving "substantial risk of death," "[p]rotracted unconsciousness," "[e]xtreme physical pain," "[p]rotracted or obvious disfigurement," or "[p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." *Id.* § 39-11-106(a)(34)(A)-(E).

The jury was presented with ample evidence to convict the defendant of aggravated robbery. Ms. Lawson positively identified the defendant as the man she saw fleeing the Kroger

parking lot with a purse. She testified that he was wearing an orange shirt, blue jeans, and a baseball cap and that he had a goatee. Although Mr. Beckner could not identify the defendant as the assailant, his description of the perpetrator's clothing matched that of Ms. Lawson. Further, the photograph from J's Food Mart of the defendant clearly showed that he wore a black hat, orange shirt, and blue jeans. The photograph also showed that the defendant had goatee-styled facial hair. Officer Johnson testified that he found a black hat matching the description of the perpetrator's hat behind the defendant. At that point in time the defendant was wearing a grey shirt; however, when law enforcement officers brought the defendant to Ms. Lawson, she had "[n]o doubt" that the defendant was the perpetrator. Viewing this evidence in a light most favorable to the State, the evidence provided sufficient grounds for the jury's finding that the defendant took the victim's pocketbook.

Furthermore, all other elements of aggravated robbery were satisfied through the evidence adduced at trial. The defendant took the pocketbook from the victim's person by violence and without her consent. He caused the victim to fall, and as a result the victim suffered immense pain and will likely suffer permanent pain and impairment. We will not disturb the jury's verdict.

*III. Conclusion*

Because the defendant has waived all issues on appeal except for his claim of insufficient evidence and the evidence adduced at trial was sufficient to support the jury's verdict, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE